TRACY L. WILKINSON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2426
     Facsimile: (213) 894-0142
     E-mail: Daniel.Boyle@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>REAL PROPERTY LOCATED IN<br>LOS ANGELES, CALIFORNIA<br><br>      Defendant. | No. 2:21-cv-8028<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. § 981(a)(1)(A) and (C)<br><br>[I.R.S.] |

     Plaintiff United States of America brings this claim against the above-captioned defendant and alleges as follows:

1

**JURISDICTION AND VENUE**

2      1.   This is civil forfeiture action brought pursuant to 18

3   U.S.C. § 981(a)(1)(A) & (C).

4      2.   This Court has jurisdiction over the matter under 28 U.S.C.

5   §§ 1345 and 1355.

6      3.   Venue lies in this district pursuant to 28 U.S.C.

7   § 1395(a).

8

**PERSONS AND ENTITIES**

9      4.   The plaintiff is the United States of America (the

10  "plaintiff" or the "government").

11     5.   The defendant in this action is Real Property Located in

12  Los Angeles, California (the "Defendant Property").[1]  The Assessor's

13  Parcel Number for the Defendant Property is 2149-011-018.  The legal

14  description of the Defendant Property is attached as Exhibit A to

15  this Verified Complaint.

16     6.   Title to the Defendant Property is in the name of Anna

17  Manukyan.

18     7.   The interests of Anna Manukyan and MERS, Inc., as nominee

19  for United Wholesale Mortgage, may be adversely affected by these

20  proceedings.

21

**BASIS FOR FORFEITURE**

22

Summary of the Fraudulent Scheme

23     8.   Beginning in or around March 2020 and continuing through at

24  least in or around August 2020, Richard Ayvazyan ("Ayvazyan"), Manuk

25

26  ─────────────────

27    [1] Pursuant to Local Rule 5.2-1 of the Local Civil Rules for the
    Central District of California, only the city and state of
    residential addresses are set forth in this Complaint.

28

Grigoryan ("Grigoryan"), and their co-conspirators (the "Ayvazyan Group") knowingly submitted fraudulent loan applications (the "False Applications") in the names of numerous business entities to lenders, including federally insured financial institutions, and the Small Business Administration (the "SBA"), and in turn, fraudulently obtained proceeds from disaster loans authorized by the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act.

9.   Using altered documents and false information, these False Applications sought to obtain loans guaranteed by the SBA through programs created by the CARES Act, including the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") program.

10.   The Ayvazyan Group submitted False Applications on behalf of shell corporations, fictitious busines entities, as well as real businesses they did not actually own or control. At times, members of the Ayvazyan Group would steal the identities of real persons in order to submit False Applications on these persons' behalf.

11.   Among other misstatements, the False Applications typically included material misrepresentations about the purported applicant's payroll, payroll taxes, number of employees, and income.

12.   Once the funds from a False Application were received, these funds were generally not used for any legitimate business purpose, but instead, would be spent by the Ayvazyan Group on lavish lifestyle expenses, luxury goods such as watches and jewelry, and residential properties.

13.   The Ayvazyan Group submitted one such False Application in the name of business entity VB Trucking, Inc. ("VBTI").

14.   Based on this False Application involving VBTI (the "VBTI False Application"), the Ayvazyan Group obtained at least $182,600.00 through a PPP loan from lender Celtic Bank, through Liberty Small Business Funding ("Liberty SBF").

15.   Instead of using proceeds of the VBTI False Application for a legitimate business purpose, and in contravention of the rules of the PPP program and EIDL program, members of the Ayvazyan Group misappropriated the VBTI False Application proceeds for their personal benefit. The Ayvazyan Group did so by, among other means, transferring the proceeds of the VBTI False Application to bank accounts they controlled, which were not business or operations accounts of VBTI.

<u>Description of the Paycheck Protection Program</u>

16.   The CARES Act is a federal law enacted around March 2020 and designed to provide emergency financial assistance to millions of Americans suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program, or PPP.  In or around April of 2020, Congress authorized over $300 billion in additional PPP funding.

17.   In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business, through its authorized representative, to acknowledge the Program rules and make certain affirmative certifications in

1  order to be eligible to obtain the PPP loan.  One such certification

2  requires the applicant, through its authorized representative, to

3  affirm that:

4     [t]he [PPP loan] funds will be used to retain workers and

5     maintain payroll or make mortgage payments, lease payments,

6     and utility payments; I understand that if the funds are

7     used for unauthorized purposes, the federal government may

8     pursue criminal fraud charges.

9     18.   In addition, the business, through its authorized

10  representative, must state, among other things, the company's number

11  of employees and average monthly payroll expenses, and provide

12  documentation showing the company's payroll expenses.  The employee

13  and payroll expense numbers are used to calculate the amount of money

14  the business is eligible to receive under the PPP.

15     19.   In the first instance, the company's PPP loan application

16  is received and processed by a participating financial institution,

17  and then the application is transmitted to the SBA for further review

18  and assessment of the applicant's eligibility.  If a PPP loan

19  application is approved, the participating financial institution

20  funds the PPP loan using the financial institution's own monies.

21     20.   PPP loan proceeds must be used by the business on certain

22  permissible expenses, namely payroll costs, interest on mortgages,

23  rent and utilities.  The PPP allows the interest and principal on the

24  PPP loan to be entirely forgiven if the business spends the loan

25  proceeds on these expense items within a designated period of time

26  (usually eight weeks of receiving the proceeds) and uses at least 75%

27  of the PPP loan proceeds on payroll expenses.

28

<u>Description of the Economic Injury Disaster Loan Program</u>

21.    The EIDL program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

22.    The CARES Act authorized the SBA to provide EIDL assistance of up to $2 million to each eligible small business experiencing substantial financial disruption due to the COVID-19 pandemic.  In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  The amount of the advance is determined by the number of employees the applicant certified having, and such advances do not have to be repaid.

23.    In order to obtain an EIDL and associated advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020.  The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

24.    EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above.  Any funds issued under an EIDL or advance are issued directly by the SBA.

EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

<u>A False Application is Submitted for a PPP Loan for VBTI</u>

25.  On or about June 2, 2020, an application and supporting documentation for a PPP loan in the amount of $182,600.00 was submitted on behalf of VBTI to Liberty SBF (the VBTI False Application).

26.  The VBTI False Application stated that Varzhan Berberyan ("V. Berberyan") was the loan applicant and sole business owner.

27.  On June 9, 2020, Liberty SBF approved the PPP loan based on the VBTI False Application, and on June 17, 2020, this loan was funded by Celtic Bank, which disbursed $182,600 to an account at Bank of America ending in 8980 (the "x8980 Account") identified in the VBTI False Application.

28.  The VBTI False Application included materially false and misleading documents and information.  For example:

a.    The VBTI False Application provided a February 2020 bank statement for the x8980 Account purporting to show an ending balance of $470,768. This bank statement was false, and in fact, the x8980 Account was only opened on or about May 8, 2020, which was approximately one month before the PPP loan application was submitted on behalf of VBTI to Celtic Bank, and three months after the purported February 2020 statement submitted with the VBTI False Application.

b.    Additionally, the VBTI False Application provided an

Internal Revenue Service ("IRS") Form SS4 which appeared to show that VBTI had been assigned Employer Identification Number ("EIN") "20-3974933" in October 2014.  In fact, this EIN was invalid, and VBTI was not incorporated in California until at least January 2018.

c.   IRS employment tax Forms 940 for the years 2019 and 2020 were also submitted in support of the VBTI False Application. In fact, there is no record of such service tax or federal income tax returns having been filed with the IRS for 2019 and 2020 as indicated in the VBTI False Application.

d.   Payroll tax reports submitted with the VBTI False Application were purportedly prepared using software by Gusto, a proprietary subscription payroll processing software utilized by businesses to prepare payroll, payroll taxes and payroll reports.  In order generate payroll tax reports with Gusto, clients must subscribe to Gusto's services. According to ZenPayroll, Gusto's parent company, VBTI was not a client of Gusto.

The VBTI False Application Was Submitted Without Authorization

29.  On January 27, 2021, Edmond Berberyan ("E. Berberyan"), V. Berberyan's adult son, confirmed that his father is a truck driver and VBTI was his father's business, but stated that VBTI had not been an operational business for several years. Additionally, E. Berberyan stated that V. Berberyan likely could not have submitted the VBTI False Application, as V. Berberyan was not proficient with computers and was unfamiliar with the documents needed for such an application.

Submission of A Loan Application Seeking an EIDL Loan for VBTI

30.  On or about April 6, 2020, an EIDL loan application was also submitted in the name of VBTI, along with supporting

documentation, to the SBA seeking the amount of $150,000.  This application was declined by the SBA on May 17, 2020 due to a fraud alert detected on the applicant's credit report and other areas of concern.  No funds were disbursed.

Tracing Analysis for the Defendant Property

31.  On June 18, 2020, $103,100 of funds from the x8980 Account were wired to Landmark Escrow, escrow number 191162-MK, to be applied towards the purchase of the Defendant Property.

32.  Prior to the deposit of the proceeds of the VBTI False Application on June 17, 2020, the balance in the x8980 Account was $6.13.

33.  On or about June 22, 2020, the Defendant Property was purchased in the name of Anna Manukyan ("Manukyan"), for $868,400, with a mortgage of $764,500 from United Wholesale Mortgage.

34.  On January 13, 2021, Leslie Casillas, the notary appearing on the Landmark Escrow documents, indicated that she did not notarize the numerous documents contained in the escrow file for the Defendant Property, that she had stopped performing notary services in February 2020, that the signatures on certain documents were not hers, and that the notary stamp used was not hers.

35.  The identity of Manukyan was used to disguise the true ownership of the Defendant Property.  Manukyan is an aunt of Grigoryan and has not been in the United States since 2017, when she returned to Armenia. On information and belief, Manukyan's identity was stolen, and she was not involved in the conspiracy.

36.  During the execution of a Federal Search Warrant, a driver's license, credit card, and other personal identification

information of Manukyan were discovered on Ayvazyan's phone.

<u>A Criminal Case Was Filed Against Ayvazyan, Grigoryan, and Other</u>

<u>Members of the Ayvazyan Group</u>

37.  On March 9, 2021, in a First Superseding Indictment, Ayvazyan, Grigoryan, and others were charged with violations of 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud and Wire Fraud), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud and attempted Bank Fraud), 18 U.S.C.§ 1028A (Aggravated Identity Theft), and 18 U.S.C.§ 1956(h) (Money Laundering Conspiracy).

38.  The First Superseding Indictment stemmed from the same PPP and EIDL fraud scheme described above.

39.  On or about June 14, 2021, Grigoryan pled guilty to violations of 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud and Wire Fraud), 18 U.S.C.§ 1028a(a)(1) (Aggravated Identity Theft), and 18 U.S.C.§ 1956(h) (Money Laundering Conspiracy).

40.  Pursuant to Grigoryan's plea agreement, Grigoryan agreed to forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of the illegal activity to which Grigoryan was pleading guilty, specifically including certain assets, but not limited to those assets listed in the plea agreement.

41.  On June 28, 2021, Ayvazyan was convicted of, among other counts, conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

FIRST CLAIM FOR RELIEF

42.   Based on the above, plaintiff United States of America alleges that the Defendant Property constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 (wire fraud) and 1344 (bank fraud).  The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

SECOND CLAIM FOR RELIEF

43.   Based on the above, plaintiff alleges that the Defendant Property constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 and 1957 (relating to money laundering), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. §§ 1343 (wire fraud) and 1344 (bank fraud).  The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

//

//

//

1

2      WHEREFORE, plaintiff United States of America prays:

3      (a)  that due process issue to enforce the forfeiture of the

4  Defendant Property;

5      (b)  that due notice be given to all interested parties to

6  appear and show cause why forfeiture should be not be decreed;

7      (c)  that this Court decree forfeiture of the Defendant Property

8  to the United States of America for disposition according to law; and

9      (d)  for such other and further relief as this Court may deem

10  just and proper, together with the costs and disbursements of this

11  action.

12

13  Dated: October 7, 2021          TRACY L. WILKINSON
                                    Acting United States Attorney
14                                  SCOTT M. GARRINGER
                                    Assistant United States Attorney
15                                  Chief, Criminal Division
                                    JONATHAN GALATZAN
16                                  Assistant United States Attorney
                                    Chief, Asset Forfeiture Section
17

18                                        /s/
                                    _____
19                                  DAN G. BOYLE
                                    Assistant United States Attorney
20
                                    Attorneys for Plaintiff
21                                  UNITED STATES OF AMERICA

22

23

24

25

26

27

28

**VERIFICATION**

I, Geffrey Clark, hereby declare that:

1.   I am a Special Agent of the Internal Revenue Service – Criminal Investigation.

2.   I have read the above Verified Complaint for Forfeiture and know its contents.  It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3.   Everything contained in the Verified Complaint for Forfeiture is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed __September 30_, 2021 in Los Angeles, California.


_____
GEFFREY CLARK
Special Agent
Internal Revenue Service

**<u>Exhibit A</u>**

The real property in the City of Los Angeles, County of Los Angeles, State of California, described as:

Lot 76 of Tract No. 25326, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 668, Pages 62 to 65 inclusive of Maps, in the Office of the County Recorder of said County.

Also known as: 20547 Aetna Street, Woodland Hills, CA 91367

Tax ID: 2149-011-018